# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

v.

CREDIT SUISSE SECURITIES (USA)
LLC; JPMORGAN CHASE & CO., a
Delaware corporation, successor in
interest to Hambrecht & Quist and
Chase Securities Inc.; BANK OF
AMERICA CORPORATION, a Delaware
corporation, successor in interest
to Fleetboston Robertson Stephens,
Inc.; ONVIA INC., a Delaware
corporation formerly known as
Onvia.com Inc.; ROBERTSON
STEPHENS, INC.; J.P. MORGAN
SECURITIES INC.,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35262

D.C. No. 2:07-cv-
01549-JLR

VANESSA SIMMONDS,
                *Plaintiff-Appellant,*

v.

DEUTSCHE BANK SECURITIES INC.;
FOUNDRY NETWORKS INC., Nominal
Defendant, a Delaware
corporation; MERRILL LYNCH
PIERCE FENNER & SMITH
INCORPORATED; J.P. MORGAN
SECURITIES INC.,
                *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35280
D.C. Nos.
2:07-cv-01566-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                *Plaintiff-Appellant,*

v.

MERRILL LYNCH & CO. INC.,
                *Defendant,*

and

FINISAR CORPORATION, Nominal
Defendant, a Delaware
corporation; MERRILL LYNCH
PIERCE FENNER & SMITH
INCORPORATED; J.P. MORGAN
SECURITIES INC.,
                *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35282
D.C. Nos.
2:07-cv-01567-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
               *Plaintiff-Appellant,*

v.

MORGAN STANLEY & CO.,
INCORPORATED; LEHMAN BROTHERS,
INC.; BANK OF AMERICA
CORPORATION; ROBERTSON
STEPHENS, INC.; AVANEX
CORPORATION,
               *Defendants-Appellees.*

*In Re:* SECTION 16(b) LITIGATION

No. 09-35285

D.C. Nos.
2:07-cv-01568-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
               *Plaintiff-Appellant,*

v.

CREDIT SUISSE GROUP, a global
bank headquartered in Zurich,
Switzerland formerly known as
Credit Suisse First Boston
Corporation; BANK OF AMERICA
CORPORATION, a Delaware
corporation, successor in interest
to BancBoston Robertson
Stephens, Inc.; TIVO INC., Nominal
Defendant, a Delaware
corporation; ROBERTSON STEPHENS,
INC.,
               *Defendants-Appellees.*

*In Re:* SECTION 16(b) LITIGATION

No. 09-35286

D.C. Nos.
2:07-cv-01576-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
*Plaintiff-Appellant,*

v.

GOLDMAN SACHS & CO., a New
York limited partnership; BANK OF
AMERICA CORPORATION, a Delaware
corporation, successor in interest
to FleetBoston Robertson
Stephens, Inc.; ROBERTSON
STEPHENS INC., a Massachusetts
corporation,
*Defendants-Appellees,*

and

TURNSTONE SYSTEMS, INC., a
Delaware corporation,
*Defendant.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35288
D.C. Nos.
2:07-cv-01569-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

GOLDMAN SACHS & CO., "Goldman
Sachs"; CREDIT SUISSE SECURITIES
(USA) LLC, "Credit Suisse"
formerly known as Credit Suisse
First Boston Corporation; BANK OF
AMERICA CORPORATION, a Delaware
corporation, successor in interest
to BancBoston Robertson
Stephens, Inc.; ROBERTSON
STEPHENS, INC.; JUNIPER NETWORKS
INC.,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35289
D.C. Nos.
2:07-cv-01577-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
          *Plaintiff-Appellant,*

      v.

MORGAN STANLEY & CO.,
INCORPORATED; DEUTSCHE BANK
SECURITIES, INC.; MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED; ARIBA INC.,
          *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35290
D.C. Nos.
2:07-cv-01570-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
          *Plaintiff-Appellant,*

      v.

MORGAN STANLEY & CO.,
INCORPORATED; CITIGROUP GLOBAL
MARKETS, INC.; AKAMAI
TECHNOLOGIES, INC.,
          *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35292
D.C. Nos.
2:07-cv-01571-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

GOLDMAN SACHS GROUP INC., a
Delaware corporation; JPMORGAN
CHASE & CO., a Delaware
corporation, successor in interest
to Hambrecht & Quist LLC,
                    *Defendants,*

                    and

KANA SOFTWARE INC., Nominal
Defendant, a Delaware corporation
formerly known as Kana
Communications Inc.; GOLDMAN
SACHS & CO.; J.P. MORGAN
SECURITIES INC.,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35293
D.C. Nos.
2:07-cv-01578-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
          *Plaintiff-Appellant,*

v.

MORGAN STANLEY, a Delaware
corporation, successor in interest
to Morgan Stanley Dean Witter,
                    *Defendant,*

and

SILICON LABORATORIES INC.,
Nominal Defendant, a Delaware
corporation; MORGAN STANLEY &
CO. INCORPORATED; LEHMAN
BROTHERS INC.; CITIGROUP GLOBAL
MARKETS, INC.,
          *Defendants-Appellees,*

JAMES W. GIDDENS,
TRUSTEE FOR THE
LIQUIDATION OF THE BUSINESS OF
LEHMAN BROTHERS INC.,
                    *Trustee-Appellee.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35297
D.C. Nos.
2:07-cv-01590-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

GOLDMAN SACHS GROUP INC., a
Delaware corporation,
                    *Defendant,*

                    and

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; PALM INC.,
Nominal Defendant, a Delaware
corporation; GOLDMAN SACHS &
CO.; MORGAN STANLEY & CO.
INCORPORATED; MERRILL LYNCH
PIERCE FENNER & SMITH
INCORPORATED; ROBERTSON
STEPHENS, INC.,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35300
D.C. Nos.
2:07-cv-01593-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

            v.

GOLDMAN SACHS GROUP INC.,
                        *Defendant,*

            and

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; MAXYGEN INC.,
Nominal Defendant, a Delaware
corporation; GOLDMAN SACHS &
CO.; ROBERTSON STEPHENS, INC.,
                        *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35301
D.C. Nos.
2:07-cv-01594-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                 *Plaintiff-Appellant,*

          v.

CREDIT SUISSE GROUP, a global
bank headquartered in Zurich,
Switzerland FKA Credit Suisse
First Boston Corporation; BANK OF
AMERICA CORPORATION, a Delaware
corporation, successor in interest
to BancBoston Robertson
Stephens, Inc.; SILICON IMAGE,
INC., Nominal Defendant, a
Delaware corporation; ROBERTSON
STEPHENS, INC.,
                 *Defendants-Appellees.*

*In Re:* SECTION *16(b)* LITIGATION

No. 09-35302
D.C. No.
2:07-cv-01575-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

GOLDMAN SACHS GROUP INC., a
Delaware corporation,
                    *Defendant,*

                    and

STREET.COM INC.; GOLDMAN SACHS
& CO.; J.P. MORGAN SECURITIES
INC.,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35303
D.C. Nos.
2:07-cv-01595-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; CRITICAL PATH,
INC., Nominal Defendant, a
California corporation; ROBERTSON
STEPHENS, INC.; J.P. MORGAN
SECURITIES, INC.,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35306
D.C. No.
2:07-cv-01582-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; CONCUR
TECHNOLOGIES, INC., a Delaware
corporation; ROBERTSON STEPHENS,
INC.; J.P. MORGAN SECURITIES, INC.,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35307
D.C. Nos.
2:07-cv-01585-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

CREDIT SUISSE GROUP, a global
bank headquartered in Zurich,
Switzerland; SOURCEFORGE, INC.,
Nominal Defendant, a Delaware
corporation, FKA VA Linux
Systems, Inc.; LEHMAN BROTHERS,
INC.,
                    *Defendants-Appellees,*

JAMES W. GIDDENS, Trustee for the
Liquidation of the Business of
Lehman Brothers, Inc.,
                    *Trustee-Appellee.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35308
D.C. No.
2:07-cv-01583-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                        v.

GOLDMAN SACHS & CO.; J.P.
MORGAN SECURITIES, INC.; RED
HAT, INC., a Delaware corporation,
                    *Defendants-Appellees.*

*In Re:* SECTION 16(b) LITIGATION

No. 09-35309
D.C. Nos.
2:07-cv-01587-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                        v.

CREDIT SUISSE GROUP, a global
bank headquartered in Zurich,
Switzerland; SELECTICA, INC.,
Nominal Defendant, a Delaware
corporation,
                    *Defendants-Appellees.*

*In Re:* SECTION 16(b) LITIGATION

No. 09-35310
D.C. No.
2:07-cv-01584-JLR

VANESSA SIMMONDS
    *Plaintiff-Appellant,*

    v.

CREDIT SUISSE GROUP SECURITIES
(USA) LLC, a Delaware limited
liability company; BANK OF
AMERICA CORPORATION, a Delaware
corporation; ROBERTSON STEPHENS,
INC., a Massachusetts corporation,
    *Defendants-Appellees,*

    and

INTERWOVEN, INC.,
     *Defendant.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35312
D.C. Nos.
2:07-cv-01579-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS
    *Plaintiff-Appellant,*

    v.

MORGAN STANLEY & CO.,
INCORPORATED; J.P. MORGAN
SECURITIES, INC.; VIGNETTE
CORPORATION, a Delaware
corporation,
    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35313
D.C. Nos.
2:07-cv-01588-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

v.

MORGAN STANLEY & CO.,
INCORPORATED; J.P. MORGAN
SECURITIES, INC.; LEHMAN
BROTHERS, INC.; SYCAMORE
NETWORKS, INC., a Delaware
corporation,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35314
D.C. Nos.
2:07-cv-01589-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

v.

CREDIT SUISSE GROUP SECURITIES
(USA) LLC, a Delaware limited
liability company; BANK OF
AMERICA CORPORATION, a Delaware
corporation; ROBERTSON STEPHENS,
INC.; J.P. MORGAN SECURITIES INC.,
a Delaware corporation,
            *Defendants-Appellees,*

            and

OPENWAVE SYSTEMS, INC., a
California corporation,
            *Defendant.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35315
D.C. No.
2:07-cv-01580-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

CREDIT SUISSE GROUP SECURITIES
(USA) LLC, a Delaware limited
liability company; BANK OF
AMERICA CORPORATION, a Delaware
corporation; ROBERTSON STEPHENS,
INC.,
                    *Defendants-Appellees,*

                    and

INFORMATICA CORPORATION, a
Delaware corporation,
                    *Defendant.*

*In Re:* SECTION *16(b)* LITIGATION

No. 09-35316
D.C. Nos.
2:07-cv-01581-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

CREDIT SUISSE GROUP SECURITIES
(USA) LLC, a Delaware limited
liability company; BANK OF
AMERICA CORPORATION, a Delaware
corporation; ROBERTSON STEPHENS,
INC., a Massachusetts corporation;
MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, a Delaware
corporation; CITIGROUP GLOBAL
MARKETS INC., a New York
corporation,
                    *Defendants-Appellees,*

                    and

INTERSIL CORPORATION, a Delaware
corporation,
                    *Defendant.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35317
D.C. Nos.
2:07-cv-01572-JLR
2:07-cv-01549-JLR

Vanessa Simmonds,
            *Plaintiff-Appellant,*

                v.

Goldman Sachs Group Inc.,
                        *Defendant,*

                and

Bank of America Corporation, a
Delaware corporation, successor in
interest to Fleetboston Robertson
Stephens, Inc.; Sonus Networks
Inc., a Delaware corporation;
Goldman Sachs & Co.; Lehman
Brothers Inc.; Robertson
Stephens, Inc.; J.P. Morgan
Securities Inc.,
                *Defendants-Appellees,*

James W. Giddens,
Trustee for the
Liquidation of the Business of
Lehman Brothers Inc.,
                    *Trustee-Appellee.*

*In Re:* Section *16(b)* Litigation

No. 09-35318
D.C. Nos.
2:07-cv-01597-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

v.

MORGAN STANLEY & CO.,
INCORPORATED; J.P. MORGAN
SECURITIES, INC., a Delaware
corporation; LEHMAN BROTHERS,
INC., a Delaware corporation,
            *Defendants-Appellees,*

            and

AVICI SYSTEMS, INC., a Delaware
corporation,
                        *Defendant.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35320
D.C. No.
2:07-cv-01573-JLR

Vanessa Simmonds,
          *Plaintiff-Appellant,*

          v.

Bank of America Corporation, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; Priceline.com Inc.,
a Delaware corporation; Morgan
Stanley & Co. Incorporated;
Merrill Lynch Pierce Fenner &
Smith Incorporated; Robertson
Stephens, Inc.,
          *Defendants-Appellees.*

*In Re: Section 16(b) Litigation*

No. 09-35321
D.C. Nos.
2:07-cv-01598-JLR
2:07-cv-01549-JLR

Vanessa Simmonds,
          *Plaintiff-Appellant,*

          v.

Goldman Sachs & Co.; Lehman
Brothers, Inc.; J.P. Morgan
Securities, Inc.; Marvell
Technology Group, Ltd., a
Bermuda corporation,
          *Defendants-Appellees.*

*In Re: Section 16(b) Litigation*

No. 09-35322
D.C. Nos.
2:07-cv-01632-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

MORGAN STANLEY & CO.,
INCORPORATED; MERRILL LYNCH
PIERCE FENNER & SMITH
INCORPORATED; PEROT SYSTEMS
CORPORATION, a Delaware
corporation,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35323
D.C. Nos.
2:07-cv-01631-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                *Plaintiff-Appellant,*

                        v.

CREDIT SUISSE GROUP, a global
bank headquartered in Zurich,
Switzerland; DEUTSCHE BANK AG,
a global bank headquartered in
Frankfurt, Germany; LEHMAN
BROTHERS HOLDINGS, INC., a
Delaware corporation; AIRSPAN
NETWORKS, INC., Nominal
Defendant, a Washington
corporation; DEUTSCHE BANK
SECURITIES, INC.; LEHMAN
BROTHERS, INC.,
                *Defendants-Appellees,*

                        and

JAMES W. GIDDENS, Trustee for the
Liquidation of the Business of
Lehman Brothers, Inc.,
                *Trustee-Appellee.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35324

D.C. No.
2:07-cv-01638-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

v.

GOLDMAN SACHS & CO.; BANK OF
AMERICA CORPORATION, a Delaware
corporation, successor in interest
BancBoston Robertson Stephens
Inc.; ROBERTSON STEPHENS, INC.;
INSWEB CORPORATION, a Delaware
corporation,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35325
D.C. Nos.
2:07-cv-01630-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

v.

MORGAN STANLEY & CO.,
INCORPORATED; DEUTSCHE BANK
SECURITIES, INC.; ASIAINFO
HOLDINGS, INC., a Delaware
corporation,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35326
D.C. Nos.
2:07-cv-01633-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
          *Plaintiff-Appellant,*

          v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc. and FleetBoston
Roberton Stephens, Inc.;
ROBERTSON STEPHENS, INC.; J.P.
MORGAN SECURITIES, INC.; KEYNOTE
SYSTEMS, INC., a Delaware
corporation,
          *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35328
D.C. Nos.
2:07-cv-01634-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
          *Plaintiff-Appellant,*

          v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; ROBERTSON
STEPHENS, INC.; J.P. MORGAN
SECURITIES INC.; DIGIMARC
CORPORATION, Nominal Defendant,
a Delaware corporation,
          *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35327

D.C. No.
2:07-cv-01652-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

                    v.

GOLDMAN SACHS & CO.; BEAR
STEARNS & CO., INC.; DEUTSCHE
BANK SECURITIES, INC.; TIBCO
SOFTWARE, INC., a Delaware
corporation,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35331
D.C. Nos.
2:07-cv-01635-JLR
2:07-cv-11549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

                    v.

MARTHA STEWART LIVING
OMNIMEDIA INC., a Delaware
corporation; MORGAN STANLEY &
CO. INCORPORATED; MERRILL LYNCH
PIERCE FENNER & SMITH
INCORPORATED,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35333
D.C. Nos.
2:07-cv-01605-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
*Plaintiff-Appellant,*

v.

CREDIT SUISSE GROUP, a global
bank headquartered in Zurich,
Switzerland; AUDIBLE INC., a
Delaware corporation; J.P.
MORGAN SECURITIES INC.,
*Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35334
D.C. Nos.
2:07-cv-01623-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
*Plaintiff-Appellant,*

v.

GOLDMAN SACHS & CO., a New
York limited partnership; MERRILL
LYNCH PIERCE FENNER & SMITH
INCORPORATED, a Delaware
corporation; BANK OF AMERICA
CORPORATION, a Delaware
corporation, ROBERTSON STEPHENS,
INC., a Massachusetts corporation,
*Defendants-Appellees,*

and

SABA SOFTWARE, INC., a Delaware
corporation,
*Defendant.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35335
D.C. Nos.
2:07-cv-01637-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

                    v.

MORGAN STANLEY & CO.
INCORPORATED, a Delaware
corporation; DEUTSCHE BANK
SECURITIES INC., a Delaware
corporation; CITIGROUP GLOBAL
MARKETS, INC., a New York
corporation,
            *Defendants-Appellees,*

                    and

TRANSMETA CORPORATION, a
Delaware corporation,
                    *Defendant.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35337
D.C. Nos.
2:07-cv-01636-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

                    v.

CAPSTONE TURBINE CORPORATION, a
Delaware corporation; GOLDMAN
SACHS & CO.; MERRILL LYNCH
PIERCE FENNER & SMITH
INCORPORATED; MORGAN STANLEY &
CO. INCORPORATED,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35339
D.C. Nos.
2:07-cv-01624-JLR
2:07-cv-01549-JLR

Vanessa Simmonds,
                    *Plaintiff-Appellant,*

                    v.

Morgan Stanley & Co.
Incorporated; Brocade
Communications Systems Inc., a
Delaware corporation,
                    *Defendants-Appellees.*

*In Re: Section 16(b) Litigation*

No. 09-35344
D.C. Nos.
2:07-cv-01626-JLR
2:07-cv-01549-JLR

Vanessa Simmonds,
                    *Plaintiff-Appellant,*

                    v.

Bank of America Corporation, a
Delaware corporation, successor in
interest to Robertson Stephens,
Inc.; J.P. Morgan Securities Inc.;
Robertson Stephens, Inc.; Oplink
Communications, Inc., a Delaware
corporation,
                    *Defendants-Appellees.*

*In Re: Section 16(b) Litigation*

No. 09-35345
D.C. Nos.
2:07-cv-01667-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
             *Plaintiff-Appellant,*

v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; ROBERTSON
STEPHENS, INC.; J.P. MORGAN
SECURITIES INC.; NAVASITE, INC., a
Delaware corporation,
             *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35346
D.C. No.
2:07-cv-01666-JLR

VANESSA SIMMONDS,
             *Plaintiff-Appellant,*

v.

MORGAN STANLEY & CO.
INCORPORATED, a Delaware
corporation; DEUTSCHE BANK
SECURITIES, INC., a Delaware
corporation; ASPECT MEDICAL
SYSTEMS, INC., Nominal Defendant,
a Delaware corporation,
             *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35347
D.C. No.
2:07-cv-01655-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

                    v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; ROBERTSON
STEPHENS, INC.; BEAR STEARNS &
CO., INC.; PACKETEER, INC.,
Nominal Defendant, a Delaware
corporation,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35348
D.C. No.
2:07-cv-01654-JLR

VANESSA SIMMONDS,
            *Plaintiff-Appellant,*

                    v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to Fleetboston Robertson
Stephens, Inc.; ROBERTSON
STEPHENS, INC.; OMNIVISION
TECHNOLOGIES, INC., a Delaware
corporation,
            *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35349
D.C. Nos.
2:07-cv-01668-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

CREDIT SUISSE SECURITIES (USA),
LLC; OCCAM NETWORKS, INC., a
Delaware corporation, FKA
Accelerated Networks, Inc.,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35350
D.C. Nos.
2:07-cv-01669-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellant,*

                    v.

J.P. MORGAN SECURITIES INC.; BEAR
STEARNS & CO., INC.; BANK OF
AMERICA CORPORATION, a Delaware
corporation, successor in interest
to Bancboston Robertson
Stephens, Inc.; ROBERTSON
STEPHENS, INC.; IMMERSION
CORPORATION, a Delaware
corporation,
                    *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35351
D.C. Nos.
2:07-cv-01670-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
           *Plaintiff-Appellant,*

v.

MORGAN STANLEY & CO.
INCORPORATED, a Delaware
corporation; CREDIT SUISSE
SECURITIES (USA), LLC; J.P.
MORGAN SECURITIES, INC.; INTERNAP
NETWORK SERVICES CORPORATION,
Nominal Defendant, a Delaware
corporation,
           *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35352

D.C. No.
2:07-cv-01653-JLR


VANESSA SIMMONDS,
           *Plaintiff-Appellant,*

v.

MICROTUNE INC., a Delaware
corporation; GOLDMAN SACHS &
CO.; J.P. MORGAN SECURITIES INC.,
           *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35355

D.C. No.
2:07-cv-01627-JLR

VANESSA SIMMONDS,
              *Plaintiff-Appellant,*

              v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to BancBoston Robertson
Stephens, Inc.; MORGAN STANLEY
& CO. INCORPORATED; ROBERTSON
STEPHENS, INC.; EXTREME NETWORKS
INC.,

              *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35357
D.C. Nos.
2:07-cv-01628-JLR
2:07-cv-01549-JLR


VANESSA SIMMONDS,
              *Plaintiff-Appellant,*

              v.

BANK OF AMERICA CORPORATION, a
Delaware corporation, successor in
interest to Robertson Stephens,
Inc.; J.P. MORGAN SECURITIES INC.;
ROBERTSON STEPHENS, INC.; COSINE
COMMUNICATIONS INC., a Delaware
corporation; GOLDMAN SACHS &
CO.,

              *Defendants-Appellees.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35358
D.C. Nos.
2:07-cv-01629-JLR
2:07-cv-01549-JLR

VANESSA SIMMONDS,
                    *Plaintiff-Appellee,*

                    v.

CREDIT SUISSE SECURITIES (USA)
LLC; CREDIT SUISSE SECURITIES
(USA) LLC; J.P. MORGAN
SECURITIES INC.; BANK OF AMERICA
CORPORATION, a Delaware
corporation, successor in interest
to Fleetboston Robertson Stephens,
Inc.; ROBERTSON STEPHENS, INC.,
                    *Defendants-Appellants.*

*In Re: SECTION 16(b) LITIGATION*

No. 09-35363
D.C. Nos.
2:07-cv-01549-JLR
2:07-cv-01549-JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted October 5, 2010
Seattle, Washington

Filed December 2, 2010

Before: Sidney R. Thomas and Milan D. Smith, Jr.,
Circuit Judges, and Michael R. Hogan, District Judge.*

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Milan D. Smith, Jr.

*The Honorable Michael R. Hogan, United States District Judge for the
District of Oregon, sitting by designation.

## COUNSEL

Jeffrey I. Tilden and Mark A. Wilner, Gordon Tilden Thomas & Cordell L.L.P., Seattle, Washington; Ian S. Birk, Keller Rohrback L.L.P., Seattle, Washington; David M. Simmonds, Redmond, Washington, for the plaintiff-appellant-cross-appellee.

David H. Kistenbroker and Joni S. Jacobsen, Katten Muchin Rosenman LLP, Chicago, Illinois; Michael L. Charlson, Hogan & Hartson, Palo Alto, California; John C. Tang, Latham & Watkins LLP, Menlo Park, California; John V. Erickson, Collette Erickson Farmer & O'Neill LLP, San Francisco, California; L. Rex Sears, Workman Nydegger, Salt Lake City, Utah, for the defendants-appellees.

Andrew B. Clubok, Kirkland & Ellis, LLP, Washington, D.C.; Christopher B. Wells, Lane Powell PC, Seattle, Washington; Gandolfo V. DiBlasi, Sullivan & Cromwell LLP, New York, New York; Joel M. Mitnick, Sidley Austin LLP, New York, New York; David W. Ichel, Simpson, Thacher & Bartlett LLP, New York, New York; Andrew J. Frackman, O'Melveny & Myers LLP, New York, New York; Robert B.

McCaw, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, for the defendants-appellees-cross-appellants.

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellant Vanessa Simmonds appeals the district court's dismissal of fifty-four related derivative complaints brought under Section 16(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78p(b). Simmonds's complaints allege that the Defendant-Appellee investment banks (collectively, Underwriters) violated Section 16(b) by engaging in prohibited "short-swing" transactions in connection with the Initial Public Offerings (IPOs) of the fifty-four Defendant-Appellee corporations (collectively, Issuing Companies) between 1999 and 2000. Simmonds seeks disgorgement of the Underwriters' alleged short-swing trading profits.

We affirm the district court's conclusion (rendered in the thirty cases in which the issue was raised) that Simmonds failed to present an adequate demand letter to the Issuing Companies prior to filing her lawsuits, and we remand these cases to the district court to dismiss the complaints with prejudice. We reverse the district court's conclusion that the remaining twenty-four cases are barred by Section 16(b)'s two-year statute of limitations, and we remand these cases to the district court so that all defendants, including the Underwriters, have a full opportunity to contest the adequacy of Simmonds's demand letters with respect to the remaining twenty four cases.

## FACTUAL AND PROCEDURAL BACKGROUND

In her First Amended Complaints (Complaints), Simmonds

alleges that while the Underwriters were acting as lead under-writers on the Issuing Companies' IPOs, they coordinated their activities with the Issuing Companies' officers, directors, and principal shareholders (collectively, Insiders) in order to obtain financial benefits from post-IPO increases in the Issuing Companies' stock prices.[1] Simmonds alleges that the Insiders entered "lock-up agreements" with the Underwriters that prevented the Insiders from offering or selling their stock for 180 days following the IPO. The purpose of the lock-up agreements was to "collectively hold[ ] . . . and refrain[ ] from selling" the Insiders' shares, and the Underwriters and Insiders intended to receive financial benefits by selling these shares into an inflated market after the lock-up agreements expired. In order to create this inflated market, the Underwriters and Insiders allegedly agreed to release the IPO to the general public at a discount to the price that "they knew to be the likely aftermarket price range . . . based on clear indications of IPO and aftermarket demand." The Underwriters also allegedly inflated the post-IPO share prices by engaging in a practice known as "laddering"—in exchange for giving their customers access to IPO allocations, the Underwriters required their customers (including the Issuing Companies' Insiders) to purchase shares "at progressively higher prices" following the IPO.[2] Finally, Simmonds asserts that the Under-writers engaged in "improper research-related activities that were designed to inflate the market price" of the shares.[3]

---

[1]The appeals have been stayed as to Defendant Lehman Brothers, Inc. pending resolution of its bankruptcy proceedings.

[2]"Laddering . . . is a practice that involves requiring IPO purchasers to commit to purchase additional shares in the after-market. Laddering not only provides improper consideration for the allocation of IPO shares, but also creates additional demand in the aftermarket, designed to insure rising prices once the shares are publicly traded." 2 Thomas Lee Hazen, *Law of Securities Regulation* § 6.0 (6th ed. Supp. 2010) (hereinafter Hazen).

[3]Some of the Complaints include specific factual details regarding the Underwriters' publication of favorable ratings on the Issuing Companies' stock. In addition, some of the Complaints describe the Underwriters' participation in secondary stock offerings.

According to Simmonds, these allegations establish that the Underwriters and Insiders acted as a group and coordinated their conduct with respect to acquiring the Issuing Companies' stock, holding the stock, and disposing of the stock "so as to share in the profits gained in the aftermarket following the IPO."

Simmonds alleges that the Underwriters had three types of "direct or indirect pecuniary interest[s]" in the Issuing Companies' stock that allowed the Underwriters to "profit[ ] from purchases and sales, or sales and purchases" of that stock. (The Complaints define these transactions as the operative "Short-Swing Transactions" for purposes of these lawsuits.) First, the Underwriters "shar[ed] in the profits of customers to whom they made IPO allocations" of the Issuing Companies' stock. Second, the Underwriters "allocat[ed] shares of [the Issuing Companies'] stock to executives and other high-level insiders of other companies, both private and public, from which [the Underwriters] expected to receive new or additional investment banking business in return." Finally, the Underwriters "creat[ed] the opportunity for other members of the [g]roup to derive personal financial benefits from the sale of the [the Issuing Companies'] stock into an inflated market, in an effort by [the Underwriters] to obtain future investment banking business from [the Issuing Companies]."[4]

In her Complaints, Simmonds seeks to compel the Underwriters to disgorge the profits they received from these "Short-Swing Transactions." Simmonds alleges that prior to filing the Complaints, she submitted demand letters insisting that the Issuing Companies seek this relief directly (as is their right under Section 16(b)). When more than sixty days had

[4]The final two activities are commonly known as "spinning," which is "[t]he giving of shares or preferred opportunities to buy shares in an initial public offering to key investment-banking clients in order to solicit or retain profitable business in the future." *Black's Law Dictionary* 1531 (9th ed. 2009).

lapsed after she sent the demand letters, Simmonds filed the Complaints at issue in this appeal.

The Underwriters jointly filed a motion to dismiss Simmonds's Complaints under Fed. R. Civ. P. 12(b)(6). The Underwriters contended that Simmonds's claims were time-barred, that Simmonds's Complaints failed to state a cause of action under Section 16(b), and that the Underwriters are protected by various exemptions from Section 16(b). Thirty of the Issuing Companies (collectively, Moving Issuers) filed a separate motion to dismiss under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).[5] The Moving Issuers argued that Simmonds's claims were time-barred and that Simmonds lacked standing because she failed to submit adequate demand letters to the Issuing Companies prior to filing suit.

The district court granted the Moving Issuers' Fed. R. Civ. P. 12(b)(1) motions to dismiss based on the inadequacy of Simmonds's demand letters, and granted the Underwriters' Fed. R. Civ. P. 12(b)(6) motions to dismiss based on the two-year statute of limitations. *In re Section 16(b) Litig.*, 602 F. Supp. 2d 1202, 1211-18 (W.D. Wash. 2009). The court did not address the Underwriters' remaining arguments regarding the merits of Simmonds's allegations and the scope of the Underwriters' exemptions from Section 16(b). *See id.* at 1205, 1219. The court dismissed without prejudice the thirty actions

---

[5]The Moving Issuers—all of which are Delaware corporations—are Akamai Technologies, Inc.; Ariba, Inc.; AsiaInfo Holdings, Inc.; Aspect Medical Systems, Inc.; Audible, Inc.; Avici Systems, Inc. (now named Soapstone Networks, Inc.); Capstone Turbine Corporation; Cosine Communications, Inc.; Digimarc Corporation; Finisar Corporation; Digimarc Corporation; Internap Networks Service Corporation; Intersil Corporation; Martha Stewart Living Omnimedia, Inc.; Maxygen, Inc.; NaviSite Inc.; Occam Networks, Inc.; Onvia, Inc.; Openwave Systems Inc.; Oplink Communication, Inc.; Packeteer Inc.; Perot Systems Corporation; Priceline.com, Inc.; RedHat, Inc.; Saba Software, Inc.; Selectica, Inc.; Silicon Laboratories, Inc.; Sonus Networks, Inc.; Sycamore Networks, Inc.; TheStreet.com, Inc.; TiVo, Inc.; and Vignette Corporation.

resolved by the Moving Issuers' Fed. R. Civ. P. 12(b)(1) motions. *Id.* at 1218. The court dismissed the remaining twenty-four cases with prejudice in light of its ruling on the statute of limitations. *Id.*

Simmonds filed a timely appeal, and the thirty Moving Issuers filed timely cross-appeals requesting that the district court's dismissals of their cases be entered with prejudice rather than without prejudice. We granted the parties' joint motion to consolidate the cases on appeal pursuant to Fed. R. App. P. 3(b)(2).

## JURISDICTION AND STANDARD OF REVIEW

Ordinarily, "[a] dismissal of a complaint without prejudice is not a final order." *Martinez v. Gomez*, 137 F.3d 1124, 1125 (9th Cir. 1998). However, the district court's orders in these cases are final and appealable because "leave to amend was not specifically allowed and [Simmonds] cannot amend [her] complaint to defeat the statute of limitations bar" as construed by the district court. *Id.* at 1125-26. Accordingly, we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the district court's dismissal for failure to comply with the demand requirement for abuse of discretion. *Potter v. Hughes*, 546 F.3d 1051, 1056, 1058 (9th Cir. 2008).[6] We review the district court's dismissal on statute of limita-

---

[6]The Moving Issuers challenged Simmonds's compliance with the demand requirement in a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The demand requirement is an element of prudential statutory standing rather than constitutional Article III standing. *Potter*, 546 F.3d at 1055-56. While Article III standing may be raised in a Fed. R. Civ. P. 12(b)(1) motion, questions of statutory standing must be raised in a Fed. R. Civ. P. 12(b)(6) motion. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004). We construe the Moving Issuers' Fed. R. Civ. P. 12(b)(1) motion as a Fed. R. Civ. P. 12(b)(6) motion. *See, e.g.*, *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995).

tions grounds de novo. *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1047 (9th Cir. 2008). We refrain from reviewing issues not addressed by the district court. *Golden Gate Hotel Ass'n v. City & Cnty. of S.F.*, 18 F.3d 1482, 1487 (9th Cir. 1994) ("As a general rule, a federal appellate court does not consider an issue not passed upon below." (internal quotation marks omitted)).

## DISCUSSION

**[1]** "Congress enacted Section 16(b) as part of the Exchange Act to prevent corporate insiders from exploiting their access to information not generally available to others." *Dreiling v. Am. Online Inc.*, 578 F.3d 995, 1001 (9th Cir. 2009) (internal quotation marks and alterations omitted). Section 16(b) requires corporate insiders to disgorge any trading profits they obtain in any "short-swing" transaction, which is defined as "a coupled purchase-and-sale, or sale-and-purchase, completed within six months." *Dreiling v. Am. Express Co.*, 458 F.3d 942, 947 (9th Cir. 2006) (citing 15 U.S.C. § 78p(b)). There are four basic elements of a Section 16(b) claim: "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998).

The purpose of the rule is not to punish specific instances of wrongdoing or remedy harms suffered by particular individuals. Rather, the law is "aimed at protecting the public" by preventing corporate insiders from exploiting inside information at the expense of ordinary investors. *Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 592 (1973). In order to fulfill this purpose, Section 16(b) "is a blunt instrument, at once both over- and under-inclusive." *Dreiling v. Am. Express*, 458 F.3d at 947. It "is over-inclusive in that it imposes strict liability regardless of motive, including trades not actually based on inside information," and "[i]t is under-

inclusive in that there is no liability for trades made on inside information if more than six months transpire between purchase and sale." *Id*.

This appeal focuses on a pair of procedural prerequisites to filing a Section 16(b) lawsuit: the demand requirement, and the statute of limitations. Shareholders may only file a Section 16(b) suit after requesting that the issuing company take appropriate action against its insiders. If sixty days pass after a shareholder demand has been made without the issuing company resolving the matter (either informally or via lawsuit), shareholders may file suit on the issuing company's behalf. However, shareholders must file their suit within two years of the transactions at issue, subject to the tolling rules described in greater detail *infra*.

## A.  Demand Requirement

**[2]** Section 16(b) provides in relevant part that all insider short-swing trading profits "shall inure to and be recoverable by the issuer," and "[s]uit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter . . . ." 15 U.S.C. § 78p(b). The issuing company's right to recover the insider's trading profits "is simply an application of an old principle in the law that if you are an agent and you profit by insider information concerning the affairs of your principal, your profits go to your principal." *Stock Exchange Regulation: Hearing Before the H. Comm. on Interstate and Foreign Commerce*, 73d Cong. 133 (1934) (statement of Thomas Corcoran, Counsel, Reconstruction Fin. Corp.).[7]

---

[7]Certain courts and commentators have suggested that Section 16(b) actions are not true derivative actions. *E.g.*, *Dottenheim v. Murchison*, 227 F.2d 737, 738 (5th Cir. 1956); *Schaffer v. CC Investments, LDC*, 286 F.

**[3]** Section 16(b) does not set forth any additional details regarding the nature and scope of this statutory demand requirement. In light of this Congressional silence, we turn to state law for guidance. The Supreme Court has explained that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108 (1991). Applying this broad principle in the context of the Investment Company Act of 1940, the *Kamen* Court held that "the contours of the demand requirement" (in that case, the standards governing demand futility) must be determined by the law of the state of incorporation. *Id.* at 101.

**[4]** Here, the adequacy of Simmonds's Section 16(b) demand letters is disputed in the thirty cases involving the Moving Issuers, all of which are Delaware corporations.[8] In

---

Supp. 2d 279, 281-82 (S.D.N.Y. 2003); 4 Hazen, *supra*, § 13.2 n.41; Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide*, § 9:03[1][a] (3d ed. 2008) (hereinafter Romeo & Dye.) We refrain from examining this question more closely because it is not relevant to the issues at hand. We note that derivative and quasi-derivative actions are generally governed by the procedural requirements of Fed. R. Civ. P. 23.1. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533-34 (1984). However, two of our sister circuits have suggested that Rule 23.1 does not apply in Section 16(b) actions. *Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 767 n.3 (7th Cir. 1979); *Dottenheim*, 227 F.2d at 738. We refrain from deciding this question because it is not relevant to our analysis.

[8]Our analysis of Simmonds's demand letters is limited to the thirty cases in which the Moving Issuers contested the adequacy of Simmonds's demand. Although we have no reason to doubt Simmonds's assertion that she submitted "similar demands" to the twenty-four issuing companies that did not join the Motion to Dismiss, these letters are not currently part of the record and must be examined by the district court in the first instance. Accordingly, our analysis does not involve the twenty cases

light of the principles articulated in *Kamen*, these thirty demand letters must be analyzed in accordance with Delaware law, unless there is a conflict between Delaware law and federal law that "would frustrate specific objectives" of Section 16 and the Exchange Act. *Kamen*, 500 U.S. at 98 (citation, internal quotation marks, and alterations omitted). Our task under *Kamen* is the same as in any case decided under state law after *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). We must " 'approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum.' " *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007) (quoting *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001)). Accordingly, we must follow the Delaware Supreme Court's pronouncements, or, if the Delaware Supreme Court has not addressed the question, "we must predict how the Court will decide the issue, based on decisions of Delaware courts, decisions from other jurisdictions, treatises and restatements." *Matsuura v. Alston & Bird*, 166 F.3d 1006, 1008 n.3 (9th Cir. 1999) (per curiam). In other contexts, we have relied on the Delaware Court of Chancery's decisions as accurate statements of Delaware law, *id.* at 1008, and we note that there are particularly compelling reasons for following the Delaware Court of Chancery's decisions because it is widely recognized as the nation's leading authority on corporate law issues, *see, e.g.*, William H. Rehnquist, *The Prominence of the Delaware Court of Chancery in the State-Federal Joint Venture of Providing Justice*, 48 Bus. Law. 351 (1992).

The Delaware Supreme Court has explained that the demand requirement exists "first to insure that a stockholder

---

involving Delaware issuers who did not join the Moving Issuers' Motion to Dismiss, the two cases involving California issuers (Critical Path, Inc., and Openwave Systems, Inc.), or the cases involving a Washington issuer (Airspan Networks, Inc.) and a Bermuda issuer (Marvell Technology Group, Ltd.).

exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984), *overruled en banc on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 & n.13 (Del. 2000). "The purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation, to decide whether to invest the resources of the corporation in litigation, and to control any litigation which does occur." *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990).[9] These justifications are not unique to Delaware. The Supreme Court has repeatedly highlighted these points, *Kamen*, 500 U.S. at 101; *Daily Income Fund*, 464 U.S. at 533, as have our sister circuits,[10] and leading commentators have approved.[11] As we have previously stated, the demand rule "is not merely a technical or unimportant requirement." *Potter*, 546 F.3d at 1058. Rather, it flows from "the general rule of American law . . . that the board of

---

[9]Another justification for the demand requirement is that the demand allows the corporation to exercise its business judgment and decide not to pursue the claim. *See Aronson*, 473 A.2d at 812 (noting that business judgment rule permits "independent disinterested directors to dismiss the action as inimical to the corporation's best interests"). This justification is inapplicable in Section 16(b) litigation because "[a]ny stockholder has a right to institute suit if the corporation fails to do so, regardless of the good faith or reasonable business judgment of the board of directors." *Pellegrino v. Nesbit*, 203 F.2d 463, 467 (9th Cir. 1953).

[10]*E.g.*, *Grossman v. Johnson*, 674 F.2d 115, 125 (1st Cir. 1982); *Lewis v. Graves*, 701 F.2d 245, 247-48 (2d Cir. 1983); *Shaev v. Saper*, 320 F.3d 373, 377 (3d Cir. 2003); *Hoffman v. Kramer*, 362 F.3d 308, 317 n.4 (5th Cir. 2004); *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 618 (6th Cir. 2008); *Boland v. Engle*, 113 F.3d 706, 712 (7th Cir. 1997); *Allright Missouri, Inc. v. Billeter*, 829 F.2d 631, 638 (8th Cir. 1987); *Stepak v. Addison*, 20 F.3d 398, 402 (11th Cir. 1994); *Gaubert v. Fed. Home Loan Bank Bd.*, 863 F.2d 59, 65 (D.C. Cir. 1988).

[11]13 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 5963 (Supp. 2010); American Law Institute, *Principles of Corporate Governance* § 7:03 cmt. c. (1992 & Supp. 2010); Daniel R. Fischel, Comment, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U. Chi. L. Rev. 168, 171-72 (1976).

directors controls a corporation." *Id*. Indeed, the policies animating shareholder demands are particularly relevant in the Section 16(b) context. "Anecdotal evidence suggests that well over 90 percent of all Section 16(b) claims are settled privately, without any lawsuit being filed." Romeo & Dye, *supra*, § 9.01[7][c] (footnote omitted). This figure would almost certainty be lower if Section 16(b) did not contain a demand requirement, as shareholder demands allow boards to investigate the allegations and resolve matters without resorting to costly and burdensome litigation.

**[5]** To give effect to these general policies, the Delaware Chancery has required that demand letters "specifically state: (i) the identity of the alleged wrongdoers, (ii) the wrongdoing they allegedly perpetrated and the resultant injury to the corporation, and (iii) the legal action the shareholder wants the board to take on the corporation's behalf." *Yaw v. Talley*, Civ. A. No. 12882, 1994 WL 89019, at *7 (Del. Ch. Mar. 2, 1994) (unpublished opinion), *reprinted in* 20 Del. J. Corp. L. 454.[12] Furthermore, "the party asserting that a demand was made . . . bear[s] the burden of proof . . . ." *Id*. These requirements flow directly from the underlying justifications for the demand requirement: "[i]t is essential that the communication contain these three elements to enable the board to perform its duty to make a good faith investigation of claims of alleged wrongdoing, and, where appropriate, to rectify the misconduct." *Id*. We believe that this is a correct statement of Delaware law as it would be decided by the Delaware Supreme Court. This standard was announced by a vice chancellor who was later elevated to the state supreme court, *see Gatz v. Ponsoldt*, No. Civ. A. 174-N, 2004 WL 3029868, at *5 (Del. Ch. Nov. 5, 2004) (unpublished opinion), and, more importantly, this standard has been uniformly followed in subsequent Chancery deci-

---

[12]Delaware rules of court allow citation to unpublished chancery decisions. 1 David A. Drexler, et al., *Delaware Corporation Law and Practice* § 2.05 (2009).

sions.[13] Accordingly, under *Kamen* and our general *Erie* jurisprudence, we apply this legal standard (and the Delaware courts' applications of it) except where it "frustrate[s] specific objectives" of Simmonds's federal cause of action. *See Kamen*, 500 U.S. at 98.[14]

Here, the thirty demand letters at issue in the Moving Issuers' motion (all of which were identical in all material respects) stated the following pertinent facts.[15] "[T]he Company's IPO underwriters, in addition to certain of its officers, directors and principal shareholders, as identified in the IPO

---

[13]*FLI Deep Marine LLC v. McKim*, No. Civ. A. 4138-VCN, 2009 WL 1204363, at *1 n.6 (Del. Ch. Apr. 21, 2009) (unpublished opinion); *Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, at *13 (Del. Ch. May 9, 2006) (unpublished opinion); *Gatz*, 2004 WL 3029868, at *5.

[14]The federal district court in Delaware has articulated a similar standard regarding the demand requirement: "At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages." *Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del.), *aff'd mem.*, 782 F.2d 1026 (3d Cir. 1985). Many federal courts, including the district court in this case, have relied on *Allison* or its federal progeny when addressing the adequacy of a demand under Delaware law. *See, e.g.*, *Richelson v. Yost*, __ F. Supp. 2d __, No. 10-1342, 2010 WL 3563108, at *8 (E.D. Pa. Sept. 9, 2010); *Dreiling v. Am. Express Co.*, 351 F. Supp. 2d 1077, 1085 (W.D. Wash. 2004), *rev'd on other grounds*, 458 F.3d 942 (9th Cir. 2006); *Levner v. Saud*, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), *aff'd sub nom. Levner v. Prince Alwaleed*, 61 F.3d 8, 9 (2d Cir. 1995); *Rubin v. Posner*, 701 F. Supp. 1041, 1045 (D. Del. 1988). We believe, however, that the better approach is to rely on Delaware state courts to the greatest extent possible. Under *Kamen*, we give preference to the state courts' approach.

[15]The demand letters were identified in the Complaints, and the thirty letters sent to the Moving Issuers were submitted to the district court as part of their Motion to Dismiss. Because the parties did not dispute the authenticity of these documents, we may consider them without converting the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

prospectus . . . coordinated their efforts for the purpose of acquiring, holding, and/or disposing of securities of the Company," obtained beneficial ownership of shares amounting to more than 10% of the company's outstanding common stock in the year following the IPO, "engaged in purchases and sales of Company within periods of less than six months during" that year, and failed to report those transactions as required by Section 16(a). Simmonds "demand[ed] that the board of directors prosecute a claim against" those persons "for violations of § 16(b) of the Securities Exchange Act of 1934," in order to "compel[ ] [them] to disgorge the profits they made through purchases and sales of Company stock."

In response to twenty-five of the thirty Moving Issuers' requests for additional information, Simmonds explained that "the challenged transactions involved the activities of the lead underwriters, the other IPO underwriters, and the officers, directors and principal shareholders of the Company . . . related to improper IPO allocation (so-called 'laddering' and 'spinning') and research and stock rating activities during the Relevant Period. As you are aware, information regarding these activities is readily available at court, law firm and SEC websites."[16]

---

[16]These follow-up letters were not mentioned in the Complaints or submitted by any of the Defendants in connection with the various motions to dismiss. Rather, they were submitted by Simmonds in opposition to the Moving Issuers' Motion to Dismiss. Ordinarily such extrinsic evidence may not be considered at this stage of the litigation. *See Knievel*, 393 F.3d at 1076. The district court determined, however, that these documents could be considered as part of the defendants' challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See In re Section 16(b) Litig.*, 602 F. Supp. 2d 1202, 1210 (W.D. Wash. 2009) ("A jurisdictional challenge under [Rule 12(b)(1)] may be made on the face of the pleadings or by presenting extrinsic evidence." (citing *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)). Because we are proceeding under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1), we do not have the benefit of going beyond the pleadings as the district court did. However, we may consider Simmonds's follow-up letters to support our conclusion that Simmonds's thirty Complaints involving the Moving Issuers must be dismissed with prejudice. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**[6]** Simmonds's initial demand letters satisfied the first part of the Delaware test for demand adequacy, which requires the shareholder to state "the identity of the alleged wrongdoers." *Yaw*, 1994 WL 89019, at \*7. In *FLI Deep Marine v. McKim*, the plaintiff's demand letter stated that " 'certain employees, officers and directors of [the company] and others' " had diverted and misappropriated the company's assets. *FLI Deep Marine*, 2009 WL 1204363, at \*1 (quoting demand letter). The Court of Chancery stated that this letter was sufficient to satisfy the first prong of *Yaw*. *Id.* at \*1 n.6. Simmonds's demand letters identify the alleged wrongdoers with a similar level of precision as in the *FLI Deep Marine* plaintiff's demand letter. Specifically, Simmonds's letters identified "the Company's IPO underwriters, in addition to certain of its officers, directors and principal shareholders, as identified in the IPO prospectus." Although the Moving Issuers contend that their respective prospectuses listed between eleven and fifty-one underwriters, officers, and directors, and we acknowledge that this is a close question, we follow the Court of Chancery's approach in *FLI Deep Marine*.[17] Because Simmonds's demand letters identified a closed set of alleged wrongdoers, we agree with the district court that "the demand letters in this case sufficiently identify the alleged wrongdoers." *In re Section 16(b) Litig.*, 602 F. Supp. 2d at 1212.

**[7]** Simmonds's letters failed, however, to satisfy the second and third prongs of the Delaware test for demand adequacy, which require the shareholder to identify the "wrongdoing . . . allegedly perpetrated" and "the legal action the shareholder wants the board to take on the corporation's behalf." *Yaw*, 1994 WL 89019, at \*7.[18] Simply put, Sim-

---

[17]The Court of Chancery's approach is in tension with the Third Circuit's holding in *Shlensky v. Dorsey*, 574 F.2d 131, 140-41 (3d Cir. 1978), in which the court held that demand letters were inadequate where they alleged that the "responsible individuals" should be held accountable.

[18]Although the Delaware courts require the demand to describe "the resultant injury to the corporation," *Yaw*, 1994 WL 89019, at \*7, this

monds's demand letters presented factual theories that vary significantly from the facts alleged in the Complaints. Her demand letters claimed that the Underwriters directly bought and sold the Issuing Companies' shares, and accordingly requested that the Issuing Companies seek disgorgement of the Underwriters' trading profits. In contrast, her Complaints do not allege that the Underwriters directly participated in buying and selling the Issuing Companies' stock, and instead seek disgorgement of the profits the Underwriters received through their investment banking operations.[19]

[8] According to the Complaints, the Underwriters violated Section 16(b) when they profited *indirectly* through their *customers'* purchases and sales of the Issuing Companies' shares. Specifically, the Complaints allege that the Underwriters engaged in "Short-Swing Transactions" when (1) their existing customers purchased and sold the issuing company's stock, (2) they obtained new banking customers in exchange for giving other companies' insiders favorable consideration

---

requirement "frustrate[s] specific objectives" of Section 16(b) by adding an additional element to the Section 16(b) cause of action. *See Kamen*, 500 U.S. at 98. Section 16(b) exists to remedy harms suffered by the general investing public, not harms suffered by issuing corporations. *See Kern County*, 411 U.S. at 591-92; *Champion Home Builders Co. v. Jeffress*, 490 F.2d 611, 619 (6th Cir. 1974) ("the absence of corporate damage is not a factor in assessing § 16(b) liability"). Accordingly, a shareholder's demand letter need not identify any corporate injury in order to satisfy the demand requirement of Section 16(b).

[19]In *Simmonds v. Morgan Stanley & Co., Inc.*, No. 09-35352, Simmonds alleges that Morgan Stanley and J.P. Morgan (the successor-in-interest to Hambrecht & Quist LLC) respectively sold $46.5 million and $34.6 million in shares of Internap Network Services Corporation as part of a secondary offering. Although Simmonds identified these transactions in her Complaint, she failed to allege that these transactions violated Section 16(b) and she failed to seek disgorgement of any profits obtained from these transactions. Accordingly, her demand letter to Internap Network Services Corporation (which is one of the Moving Issuers), was defective for the same reasons as in the other cases.

in the issuing company's IPO, and (3) they obtained additional banking business from the issuing company in exchange for helping the issuing company's insiders profit from their own company's IPO. The Complaints assert that these "Short-Swing Transactions" violated Section 16(b), and request disgorgement of profits obtained through these "Short-Swing Transactions." None of these alleged transactions is referenced in any way in the original demand letters submitted to the Moving Issuers. The garden-variety Section 16(b) claim made out in these demand letters bears no resemblance to the elaborate scheme described in Simmonds's Complaints.

**[9]** Even if we consider Simmonds's follow-up letters to twenty-five of the Moving Issuers, she failed to identify the wrongful acts "clearly and specifically." *Yaw*, 1994 WL 89019, at *8. The follow-up letters noted that the "challenged transactions . . . [are] related to improper IPO allocation (so-called 'laddering' and 'spinning') and research and stock rating activities." Simmonds's conclusory references to "laddering," "spinning," and "research and stock rating," were vague and ambiguous, as was her open ended reference to "court, law firm and SEC websites," and completely failed to provide sufficiently detailed information to permit the boards to conduct a good faith inquiry into the alleged wrongdoing.

**[10]** Moreover, because the demand letters and the Complaints contain distinct factual assertions, the demand letters also failed to set forth "the legal action the shareholder wants the board to take on the corporation's behalf." *Yaw*, 1994 WL 89019, at *7. The demand letters requested that the Moving Issuers "compel[ ]" the Underwriters and other group members to "disgorge the profits they made through purchases and sales of [the issuing company's] stock." The Complaints, on the other hand, do not mention the Underwriters' direct trading profits, and instead seek disgorgement of the profits the Underwriters received through their investment banking operations.

**[11]** The Court of Chancery has noted that demand letters must be sufficiently specific to "enable the board to perform its duty to make a good faith investigation of claims of alleged wrongdoing[ ] and . . . to rectify the misconduct" at issue in a subsequent lawsuit. *Yaw*, 1994 WL 89019, at *7. The court further noted that "to require a board to investigate claims asserted ambiguously . . . would not be an efficient use of corporate resources, because the board would lack the information necessary to make a good faith inquiry." *Id.* Simmonds's demand letters were particularly inadequate because they described a different course of conduct than the one she described in her Complaints. And clearly, Simmonds's demand letters could have led directors to investigate facts (the Underwriters' purchases and sales of Issuing Company stock) that were only marginally related to the issues ultimately raised in the Complaints (the Underwriters' *customers'* purchases and sales of Issuing Company stock, and associated profit-sharing agreements between the Underwriters and their customers).

We are not persuaded by Simmonds's argument that the Moving Issuers subjectively understood what she meant in her demand letters. Delaware case law sets forth an objective standard for assessing the adequacy of a demand and does not inquire whether the board of directors had independent knowledge of relevant information. To the extent that Simmonds's argument has been addressed by any courts, it has been soundly rejected. For example, the Third Circuit has rejected a shareholder's argument that a conclusory demand was adequate because "the directors were in a better position than the shareholders to make the investigation necessary to uncover wrongdoers." *Shlensky*, 574 F.2d at 141. In the related context of demand refusal, the Delaware Supreme Court rejected the argument that "[t]he board has better access to the relevant facts" and plaintiffs should therefore be relieved of their burden to show that the board's refusal was improper. *Levine v. Smith*, 591 A.2d 194, 209 (Del. 1991)

(internal quotation marks omitted), overruled en banc on other grounds by *Brehm*, 746 A.2d at 253 & n.13.

Simmonds's argument is an end-run around Delaware's requirement that shareholders make reasonably specific demands, and were we to adopt Simmonds's proposed approach, Delaware's demand standard would be eviscerated. Plaintiffs in derivative actions often seek relief for a corporate insider's wrongdoing. If the demand requirements were relaxed on account of insiders' subjective knowledge, then shareholders would *never* have to "clearly and specifically" describe their assertions in a demand letter. *See Yaw*, 1994 WL 89019, at *8. To the extent that Simmonds believed that relevant information was "readily available at court, law firm and SEC websites" as she claimed in her follow-up letters, it was her burden under Delaware law to distill the relevant facts and present them to the board. If Simmonds lacked access to necessary information that was exclusively within the corporation's possession, Delaware law specifically allows a shareholder to examine "[t]he corporation's stock ledger, a list of its stockholders, and its other books and records," Del. Code Ann. tit. 8, § 220(b)(1), and Delaware courts have strongly encouraged shareholders to avail themselves of such investigative tools, *see King v. VeriFone Holdings, Inc.*, 994 A.2d 354, 356 & nn.2-3 (Del. Ch. 2010) (collecting cases). In short, Delaware law does not allow shareholders to forego pre-suit investigations in an attempt to shift information-gathering costs onto the corporation.

Simmonds also argues in part that these Delaware rules are incompatible with Section 16. She alleges that she was unable to obtain necessary information because the group members failed to file Section 16(a) reports as required by federal law. We disagree with Simmonds's contention that Delaware's demand-specificity requirement is incompatible with Section 16(b). Delaware law expressly permits shareholders to inspect the corporation's "stock ledger," which "is a compilation of the transfers by and to each individual shareholder, with each

transaction separately posted to separately maintained shareholder accounts." *Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377, 393 (Del. 2010) (en banc) (internal quotation marks omitted). In most Section 16(b) cases, a request to inspect the issuing company's books and records (including the stock ledger) would likely allow shareholders to gather enough information to submit an adequate demand to the issuing company. Simmonds does not appear to have made any effort to obtain such information prior to submitting her demand letters and filing her lawsuits. Accordingly, we hold that Delaware's state law demand requirement is compatible with Section 16.

As an alternative to her argument that her demand letters were adequate, Simmonds contends that the demand requirement should be excused as futile. However, Delaware courts have repeatedly held that a shareholder concedes that a demand is not futile by submitting a demand to the board. "Delaware law could hardly be clearer" in holding that shareholders may not invoke the futility exception after submitting a demand to the board. *FLI Deep Marine*, 2009 WL 1204363, at *3; *see also id.* at *3 n.17 (collecting cases).

**[12]** We hold that the thirty demand letters in the record fail to satisfy the demand requirement under Delaware law. Accordingly, we affirm the district court's order granting the Moving Issuers' motions to dismiss the thirty cases to which they are parties.

## B.   Statute of Limitations

**[13]** The district court dismissed the cases involving the remaining twenty-four issuers (that is, the Issuing Companies that did not join the Moving Issuers' Motion to Dismiss) on account of the statute of limitations. Section 16(b) provides that " no . . . suit shall be brought more than two years after the date such profit was realized" from the alleged short-swing transactions. 15 U.S.C. § 78p(b). We have previously issued a thorough decision interpreting this provision, *Whitta-*

*ker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981), and we are bound by our prior holding.

In *Whittaker*, a corporate insider engaged in prohibited short-swing transactions between December 1965 and December 1970. The corporation sought disgorgement in January 1971 without filing a lawsuit. The insider paid the full amount requested, but later filed suit against the corporation seeking to recover some of the money he had paid. *Id.* at 518-19. In the lawsuit, he argued that Section 16(b)'s statute of limitations barred the corporation from retaining any amounts that he had obtained from short-swing transactions prior to January 1969 (that is, two years prior to the time that the corporation requested that he disgorge his profits). *Id.* at 519. The district court agreed with the insider, and "found that various corporate officers had information which put the Corporation on notice throughout the relevant trading period" between 1965 and 1970. *Id.* at 527. Based on this factual finding, the district court allowed the corporation to recover the insider's profits only for the two years prior to the disgorgement request. *Id.* at 519, 527; *see also Whittaker v. Whittaker Corp.*, No. 75-2546, 1977 WL 1006, at *9-10 (C.D. Cal. Mar. 22, 1977) (setting forth factual findings in greater detail).

On appeal, we explained that there were three competing approaches to Section 16(b)'s statute of limitations: (1) a "strict" approach under which the statute is treated as a statute of repose—that is, a firm bar that is not subject to tolling; (2) a "notice" or "discovery" approach like the one that had been applied by the district court, "under which the time period is tolled until the Corporation had sufficient information to put it on notice of its potential § 16(b) claim"; and (3) a "disclosure" approach "under which the time period is tolled until the insider discloses the transactions at issue in his mandatory § 16(a) reports." *Whittaker*, 639 F.2d at 527. After thoroughly analyzing the merits of the competing interpretations, *id.* at 527-30, we held unequivocally that "the disclosure interpretation is the correct construction of § 16." *Id.* at 527. Under this

approach, "an insider's failure to disclose covered transactions in the required § 16(a) reports tolls the two year limitations period for suits under § 16(b) to recover profits connected with such a non-disclosed transaction. The two-year period for § 16(b) begins to run when the transactions are disclosed in the insider's § 16(a) report." *Id.* at 530. Accordingly, we reversed the district court's use of the "notice" approach and held that the corporation could recover all of the insider's short-swing profits, even those obtained long after the corporation was on notice of the insider's trading. *Id.*

**[14]** In this case, the Defendants advance various arguments in an attempt to distinguish *Whittaker*. All of these arguments are variations on a single theme—Simmonds knew or should have known of the alleged wrongful conduct many years before she filed her Complaints. But despite the Defendants' arguments, the central holding of our opinion in *Whittaker*—both in our legal analysis and our application of the law to the facts of that case—is that the Section 16(b) statute of limitations is tolled until the insider discloses his transactions in a Section 16(a) filing, regardless of whether the plaintiff knew or should have known of the conduct at issue. We recently restated this holding in *Roth v. Reyes*, 567 F.3d 1077 (9th Cir. 2009), in which we concluded that the statute of limitations begins to run when the insider files a Section 16(a) report *even if* the contents of the filing inaccurately claim an exemption that does not actually apply. *Id.* at 1083. We explained that the basic act of filing a Section 16(a) report satisfies *Whittaker*'s disclosure requirement and "supports the goals of disclosure and transparency" underlying Section 16. *Id.* at 1083.

The Defendants advance four specific points in support of their general theory that *Whittaker* can be distinguished. First, they argue that *Whittaker* does not apply because Simmonds knew or should have known of the relevant facts sometime around 2001. By that time, much of the information described in the Complaints had been publicly disclosed in court filings,

news reports, and the Issuing Companies' IPO registration filings. The Defendants contend that "[w]hen a party is aware of the necessary facts to bring a claim, there is no excuse for any delay beyond the statute of limitations period, let alone a delay of six years." However, this theory was plainly rejected in *Whittaker*. Our *Whittaker* decision *reversed* the district court's conclusion that the statute of limitations began to run at the time that "various corporate officers had information which put the Corporation on notice" of the insider's short-swing trades. *Whittaker*, 639 F.2d at 527. The Defendants' "notice" argument is an unpersuasive attempt to revive a theory that we considered and rejected nearly thirty years ago.

Second, the Defendants argue that the Section 16(b) limitations period should not be tolled indefinitely unless the defendant actively "conceal[s] the facts necessary to trigger a Section 16(b) lawsuit."[20] This theory overlooks the footnote in *Whittaker* in which we explained that "[t]he failure to disclose in § 16(a) reports, whether intentional or inadvertent, is deemed concealment, thus triggering the traditional equitable tolling doctrine of fraudulent concealment." *Id.* at 527 n.9. That conclusion was further bolstered by our emphasis on creating a rule that can be "mechanically calculated from objective facts," *id.* at 529, which would be undermined if courts were required to conduct case-specific inquiries into the insiders' state of mind about their failure to file Section 16(a) reports.

Third, the Defendants contend that *Whittaker* does not apply in this case because the Underwriters are exempt from Section 16(a) reporting requirements under the SEC's underwriting and market-making exemptions. However, this argu-

---

[20]This approach was advocated by Judge Jacobs of the Second Circuit in *Litzler v. CC Investments, L.D.C.*, 362 F.3d 203, 208 n.5 (2d Cir. 2004) (Jacobs, J., concurring) ("The author of this opinion . . . would have preferred to say that the statute of limitations in Section 16(b) is equitably tolled only when the failure to file is intentional or unreasonable.").

ment finds no support in *Whittaker*'s bright-line rule. *See Whittaker*, 639 F.2d at 527 & n.9, 530. In any event, were we to follow the Defendants down this line of argument, we would soon find ourselves deciding the substantive merits of the parties' dispute. The question of whether or not the Underwriters are exempt from filing Section 16(a) reports is identical to the question of whether they may be held liable under Section 16(b). We refrain from adopting an approach that "would merge the tolling doctrine with the substantive wrong . . . ." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000).

Finally, the Defendants argue that *Whittaker* does not apply because it involved a *corporation* that was seeking disgorgement, rather than an *outside shareholder* as in the instant case. They assert that we should adopt different lines of analysis depending on whether the plaintiff is an issuing company or is an outside shareholder such as Simmonds. However, our decision in *Whittaker* created a blanket rule that applies in *all* Section 16(b) actions. A key component of our reasoning was that Section 16(a) notices allow the company's shareholders —who "are likely to be outsiders, minority holders"—to obtain the information necessary to bring a Section 16(b) action. *Whittaker*, 639 F.2d at 528. Nothing in *Whittaker*'s logic or reasoning would allow us to distinguish between issuing companies and outside shareholders, and we refrain from adopting such a strained interpretation of our precedent.

**[15]** In short, the fundamental holding of *Whittaker* is that Section 16(b)'s two-year statute of limitations begins to run from the time that the defendant files a Section 16(a) disclosure statement. Because Simmonds alleges that the Defendants did not file any Section 16(a) reports, we conclude that Simmonds's claims are not time-barred. Accordingly, the district court's decision on this ground is reversed.

## C. Cross-Appeal

In their cross-appeal, the Underwriters contend that the district court erred by dismissing the thirty cases involving the

Moving Issuers without prejudice on account of Simmonds's inadequate demand. They argue that these dismissals should have been with prejudice because Simmonds's claims are time-barred. Although we disagree that Simmonds's claims are time-barred, we agree that the district court should have dismissed the thirty Complaints against the Moving Issuers with prejudice on account of her failure to satisfy the Section 16(b) demand requirement in those cases.

**[16]** We have previously held that a complaint may be dismissed with prejudice on account of the plaintiff's failure to satisfy the demand requirement, *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 990-91 (9th Cir. 1999), *abrogated on other grounds*, *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322-24 (2007), and various other circuits have reached the same conclusion.[21] Although the district court dismissed Simmonds's thirty Complaints against the Moving Issuers "without prejudice," our decision to convert the dismissal is not unprecedented. In a derivative action in which the shareholder failed to show demand futility, the First Circuit *sua sponte* converted the district court's dismissal from "without prejudice" to "with prejudice." *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 267 (1st Cir. 1973). The court explained that the plaintiff was barred from relitigating the issues decided in that action, and accordingly the dismissal should have been entered with prejudice rather than without. *Id*.

**[17]** We agree with the First Circuit's approach in *Kauffman*. Simmonds is barred from relitigating issues relating to

---

[21]*E.g., Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007) (dismissal with prejudice and without leave to amend); *Starrels v. First Nat'l Bank of Chicago*, 870 F.2d 1168, 1169, 1172 (7th Cir. 1989) (dismissal with prejudice and without leave to amend); *Gaubert v. Fed. Home Loan Bank Bd.*, 863 F.2d 59, 62, 69 (D.C. Cir. 1988) (dismissal with prejudice and without leave to amend); *Shlensky*, 574 F.2d at 141-42 (dismissal without leave to amend); *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 267 (1st Cir. 1973) (dismissal with prejudice).

the adequacy of the demand letters she sent to the thirty Moving Issuers and the follow-up letters she sent to twenty-five of the Moving Issuers. As with any issue litigated fully on merits, shareholders may not endlessly relitigate the adequacy of their pre-suit demand. Accordingly, we vacate the district court's order dismissing without prejudice the thirty cases involving the Moving Issuers, and the district court is instructed to dismiss these thirty cases with prejudice.

[18] In the twenty-four cases that were improperly dismissed as time-barred and in which the Issuing Companies did not join the Moving Issuers' Motion to Dismiss, the district court is directed to permit the Underwriters and Issuing Companies to seek dismissal on account of Simmonds's failure to comply with the demand requirement.[22] We note that

---

[22]Contrary to the district court's suggestion, *see In re Section 16(b) Litig.*, 602 F. Supp. 2d at 1211, the Underwriters should be permitted to file motions challenging Simmonds's compliance with the demand requirement. *See Shlensky v. Dorsey*, 574 F.2d 131, 142 (3d Cir. 1978) ("it is well settled . . . that defendants other than the corporation whose rights the shareholder plaintiffs are seeking to vindicate may successfully raise the defense of failure to comply with Rule 23.1" and the demand requirement); *accord Hawes v. City of Oakland*, 104 U.S. 451, 461-62 (1881) (complaint dismissed on motion by third party defendant); *Brody v. Chem. Bank*, 517 F.2d 932, 933 (2d Cir. 1975) (per curiam) (complaint dismissed sua sponte).

The Delaware Supreme Court has thoroughly and persuasively explained why third parties have standing to raise defenses based on the shareholder's failure to comply with demand requirement. *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988). "The standing of a third party to assert demand related defenses must be determined, not on the basis of whether such status benefits the interests of the third party, but whether according such status furthers the nature and purpose of the demand requirement." *Id*. The court explained (as we discussed *supra*) that "[t]he purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation and to control any litigation which does occur." *Id*. Accordingly, the court concluded that third party defendants may challenge the sufficiency of a shareholder's demand. *Id*.

our discussion in this opinion will almost certainly resolve the twenty remaining cases involving issuers incorporated in Delaware. (We express no opinion regarding the four cases involving non-Delaware issuers.) However, as Simmonds' demands letters to those companies are not in the record, we leave it to the district court to address those cases in the first instance.[23] We note that four of the cases involve issuers

---

We agree with the reasoning of the Delaware Supreme Court in *Kaplan*, and disagree with the district courts that have held that this result is at odds with the purposes of Section 16(b). *See In re Section 16(b) Litig.*, 602 F. Supp. 2d at 1211 (collecting cases). In light of our general discussion of the demand requirement, we conclude that the Section 16(b) demand requirement—like the demand requirement in all derivative actions—exists for the purpose of allowing corporations to investigate their insiders' wrongdoing, resolve disputes without resorting to litigation, and control any litigation that may take place. *See Kaplan*, 540 A.2d at 730. In addition, we note that the demand requirement of Section 16(b) is a *required* statutory precondition to a shareholder's lawsuit. *See* 15 U.S.C. § 78p(b). As the Delaware Supreme Court explained in *Kaplan*, third parties are permitted to raise demand-related defenses because a shareholder's "right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action." *Id.* We see no reason why such reasoning does not apply in the Section 16(b) context.

Accordingly, in the twenty-four cases being remanded, the district court should follow the general rule under both Delaware law and federal law: any defendant in a Section 16(b) action may challenge the adequacy of the shareholder's pre-suit demand.

[23]Because consolidated appeals "do not merge into one" for all purposes, Fed. R. App. P. 3 advisory committee's note (1998 amend.), the district court should be careful about invoking the "law of the case" doctrine in the remanded cases involving the twenty issuers incorporated in Delaware that did not join the Moving Issuers' Motion to Dismiss, *see generally*, Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Ligitation*, 135 U. Pa. L. Rev. 595, 623-25 (1987) (hereinafter Steinman); *cf. State HMO Management, Inc. v. Tingley Systems, Inc.*, 181 F.3d 174, 180 (1st Cir. 1999) (treating consolidated cases "as a single action for res judicata purposes"). However, if Simmonds's demand letters to those twenty Delaware-

incorporated in jurisdictions other than Delaware (two issuers are incorporated in California, one in Washington, and one in Bermuda). We direct the district court to analyze the adequacy of those demand letters in accordance with the choice-of-law principles articulated in *Kamen*—namely, the court should apply the demand requirements of California, Washington, and Bermuda law, unless those requirements "would frustrate specific objectives" of Section 16 and the Exchange Act. *Kamen*, 500 U.S. at 98 (citation, internal quotation marks, and alterations omitted).

## CONCLUSION

We **AFFIRM** the district court's conclusion that Simmonds's demand letters to the thirty Moving Issuers were inadequate under Delaware law, **REVERSE** the district court's conclusion that all of Simmonds's claims are time-barred, and **VACATE** the district court's dismissal orders as to the thirty Moving Issuers with instructions that the district court dismiss these thirty cases with prejudice on account of Simmonds's failure to satisfy Delaware's demand requirement. We **REMAND** the remaining twenty-four cases (that is, the cases involving the twenty-four Issuing Companies that did not join the Moving Issuers' Motion to Dismiss) with instructions for the district court to allow the Underwriters and Issuing Companies to file an appropriate motion to challenge the adequacy of Simmonds's demand letters under Delaware, California, Washington, and Bermuda law, unless that law conflicts with Section 16(b). Costs are awarded to the Appellees.

---

incorporated issuers are substantially similar to the thirty demand letters examined in this opinion, the district court is bound by *stare decisis* to apply our holding that demand letters such as the thirty letters we have examined are inadequate as a matter of Delaware law. *See* Steinman, *supra*, at 624-25.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED IN PART.

---

M. SMITH, Circuit Judge, specially concurring:

The statutory text of Section 16(b) provides that "no such suit shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b). In my view, "no suit" means no suit, and "two years after the date such profit was realized" means two years after the insider's final profitable transaction, regardless of when—or even if—a Section 16(a) report is filed. The text of the statute sets a firm bar against Section 16(b) suits filed more than two years after the transaction is completed. Accordingly, I agree with the Supreme Court's *dictum* that Section 16(b) "sets a 2-year . . . period of repose." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360 n.5 (1991).

This straightforward textual reading is further confirmed by comparing the language of Section 16(b) with the language of the other statutes of limitations in our securities laws. *See Lampf*, 501 U.S. at 360-61 & nn.5-7. The Court in *Lampf* explained that language such as Section 16(b)'s "no such suit shall be brought" creates periods of repose that are not subject to tolling. *Id.* at 360-61, 363. In addition, the general securities fraud statute of limitations added by the Sarbanes-Oxley Act of 2002, 116 Stat. 801, provides that securities fraud suits "may be brought not later than . . . 5 years after such violation." 28 U.S.C. § 1658(b)(2). The Supreme Court recently noted that this provision "giv[es] defendants *total repose* after five years." *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1797 (2010) (emphasis added). There is little meaningful distinction between the language of 28 U.S.C. § 1658(b)(2) and Section 16(b)—one provides that suits "may be brought not later than . . . 5 years after such violation," and the other provides that "no such suit shall be brought more than two years

after the date such profit was realized." To me, this nearly identical language should "giv[e] defendants total repose" under both statutes. *See Merck*, 130 S. Ct. at 1797.

There are numerous reasons why Congress would elect to create a firm two-year period of repose for Section 16(b) actions. Although there is no direct evidence of Congress's intent, the legislative history has left behind an intriguing clue. When the Senate and House of Representatives passed their respective bills that later became the Exchange Act, the House of Representatives's verison did not even provide for a private right of action under Section 16(b), whereas the Senate's version provided a right of action but omitted a statute of limitations. Romeo & Dye*, supra*, § 1.02[3][b][vi]. It is reasonable to infer that the House negotiators, in reaching a compromise with the Senate over the inclusion of a private right of action, might have bargained to include a stringent statute of limitations to circumscribe that right of recovery.

Admittedly, the legislative history is inconclusive, but a restrictive statute of limitations is eminently logical. Section 16(b) imposes an inflexible penalty on corporate insiders even if they are not at fault and third parties are unharmed. As Section 16(b)'s critics have noted, its disgorgement provision "is little more than a trap for the unwary." *Id.* § 9.01[11][a]. It makes no sense to allow individuals to be hauled into court years—or even decades—after they unintentionally violate Section 16. Our holding in *Whittaker* creates the possibility that "a claim that affects long-settled transactions might hang forever over honest persons." *Litzler v. CC Investments, L.D.C.*, 362 F.3d 203, 208 n.5 (2d Cir. 2004) (Jacobs, J., concurring). *Whittaker* could lead to the anomalous situation in which a corporate officer who mistakenly calculates the six-month short-swing period can be compelled to disgorge his trading profits decades after the fact, whereas a culpable officer who engages in fraudulent insider trading becomes immune from civil suit after five years as long as his trades were spaced more than six months apart. I fail to see the logic

behind such a result, and I fear that *Whittaker* failed to foresee such anomalies.

I note that *Whittaker* was motivated by the well-intentioned concern that corporate insiders could avoid Section 16(b) liability if they flout Section 16(a)'s reporting requirements. However, I do not believe that this concern warrants the creation of never-ending liability for corporate directors, officers, and shareholders. The Exchange Act is a comprehensive statute that was designed to address various types of wrongdoing. It is inappropriate for us to use Section 16(b), which prohibits certain types of insider trading, to enforce the policies of Section 16(a), which requires disclosure of insider trading. The Exchange Act creates more than adequate enforcement mechanisms for enforcing Section 16(a)'s disclosure requirements. If the insiders do not file their reports, they may be held professionally, civilly, or criminally liable for failing to do so. *See, e.g.*, 15 U.S.C. § 78ff(a) (criminal penalties); *In re Gold*, Exchange Act Release No. 34-51585, 85 S.E.C. Docket 724 (Apr. 20, 2005) (professional and civil penalties). And if the insiders withhold their Section 16(a) reports in order to profit from inside information, they may be subjected to Rule 10b-5 securities fraud actions. *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022-24 (9th Cir. 2005).

Ultimately, I believe that *Whittaker*'s cure is worse than the disease it intended to address. I would have preferred to adopt any one of the three alternatives to *Whittaker*: the statute of repose approach, *Lampf*, 501 U.S. at 360 n.5, the actual notice approach, *Litzler*, 362 F.3d at 208, or the hybrid approach that tolls the statute in cases of "fraud or concealment," *id.* at 208 n.5 (Jacobs, J., concurring). Of these three approaches, the statutory text and statutory structure clearly point toward the repose approach. Were it not for *Whittaker*, I would hold that Section 16(b) suits may not be brought more than two years after the short-swing trades take place.

Despite these concerns, I am compelled to follow *Whittaker. See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). Accordingly, I concur with the panel's decision.